FILED

2015 Sep-22  PM 04:20
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **DAVID W. GRAYSON and**<br>**RITA B. GRAYSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. _____** |
| | ) | |
| **ALABAMA & GULF COAST**<br>**RAILWAY, LLC,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **GENESEE & WYOMING, INC.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **and** | ) | |
| | ) | |
| **Fictitious Defendants A, B, & C,**<br>**who are those individuals,**<br>**partnerships, corporations, limited**<br>**liability companies, or other legal**<br>**entities whose actions or omissions**<br>**caused or contributed to the**<br>**Plaintiffs' injuries and damages,**<br>**and whose true names and**<br>**identities are presently unknown to**<br>**the Plaintiffs but will be substituted**<br>**by amendment when ascertained,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiffs David W. Grayson and Rita B. Grayson ("the Graysons") file the following complaint against Genesee & Wyoming, Inc. ("G&W"), Alabama & Gulf Coast Railway, LLC ("AGR"), and Fictitious Defendants A, B, and C as follows:

## PARTIES

1.     David W. Grayson is an individual citizen and resident of the State of Alabama, residing therein at 606 Berry Circle NW, Fayette, Alabama 35555.

2.     Rita B. Grayson is an individual citizen and resident of the State of Alabama, residing therein at 606 Berry Circle NW, Fayette, Alabama 35555.

3.     Defendant Alabama & Gulf Coast Railway, LLC is a limited liability company duly organized and existing under the laws of the State of Delaware with its principal place of business located at 7557 Rambler Ste. 280, Dallas, Texas 75231.

4.     Defendant Genesee & Wyoming, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 20 West Avenue, Darien, Connecticut 06820.

5.     Fictitious Defendants A, B and C are those individuals, partnerships, corporations, limited liability companies, or other legal entities whose actions or

omissions caused or contributed to the Plaintiffs' injuries and damages as more particularly described below.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 under the Oil Pollution Act ("OPA"), 33 U.S.C.A. § 2701 et seq., and under the Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA"), 33 U.S.C.A. § 1251 et seq..  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

## NOTICE

7.     Pursuant to 33 U.S.C. 2713(a), 33 U.S.C.A. § 1365(b)(1)(A) and 40 C.F.R. § 135.3, Plaintiffs gave Defendants notice more than ninety (90) days prior to the filing of this Complaint of the Oil Pollution Act and Clean Water Act violations alleged herein and their intent to sue.  Service of notice on the Defendants was by certified mail.  At the same time, a copy of the notice was mailed to the Administrator of the Environmental Protection Agency ("EPA"), the Regional Administrator of Region IV of the EPA, and the Director of the Alabama Department of Environmental Management.

8.     Since the Plaintiff gave notice, the violations complained of are continuing and have not ceased.  Neither the EPA nor the State of Alabama has

commenced a civil or criminal enforcement action constituting diligent prosecution for the violations set forth herein.

9.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Pickens County, Alabama, and venue is therefore appropriate in the Northern District of Alabama.  The Defendants are also subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL BACKGROUND

10.     On or about November 7, 2013, and for some time prior thereto, Defendants owned and operated a railway that extended from Armory, Mississippi to Pensacola, Florida.  The railway regularly transported crude oil, as well as coal, iron, steel and other raw materials and chemicals.

11.     On or about November 7, 2013, Defendants owned and operated a freight train carrying some 3,000,000 gallons of crude oil.

12.     Plaintiffs own several adjoining parcels of land directly west of the Defendants' railway. The Plaintiffs' land stretches several acres south of McCaa Bottom Road with the railway to the east.  Lubbub Creek passes through the center of their property.

13.     The Defendants have a right-of-way for the purpose of maintaining a railroad on the Plaintiffs' land.

14.     On or about November 7, 2013, a southbound freight train owned and operated by Defendants was transporting crude oil along the railway from Armory, Mississippi to Walnut Hill, Florida.

15.     The crude oil was a Class A light, volatile oil which is highly fluid and spreads rapidly on solid or water surfaces.

16.     At all material times, the freight train and the railway were under the custody, control and care of Defendants, jointly and severally, individually and through their respective agents, workmen, and/or employees.

17.     On or about November 7, 2013, the freight train suffered a derailment in Pickens County, near or in Aliceville, Alabama.

18.     On or about November 7, 2013, thirty (30) of the ninety (90) freight cars, along with one (1) of three (3) engines derailed, causing an explosion and releasing an estimated 350,000 gallons of crude oil into the water, soil, surface and the atmosphere.

19.     The explosion caused a fire that burned approximately nine acres of vegetative cover and trees, some or all of which included marketable timber located on real property owned by the Plaintiffs.

20.     A portion of the tracks located on or near a parcel of land owned by the Plaintiffs was destroyed in the derailment and/or fire.

21.     The section of track that was destroyed and/or involved in the derailment was located above and adjacent to wetlands and an unnamed tributary.

22.     The wetlands and the unnamed tributary discharge into Lubbub Creek, which flows into the Tombigbee River, and ultimately, via the Alabama and Mobile Rivers, flows directly into the Gulf of Mexico.

23.     This body of water was and remains polluted as a result of the contaminants leaked during the derailment and/or remaining after the railway was reconstructed.

24.     The section of track that was destroyed was on a raised track bed.

25.     After the fire was extinguished, the Defendants implemented an action plan for an environmental clean-up and were responsible for reconstructing the raised track bed and the railway.

26.     Some or all of the soil used in the reconstruction of the raised track bed and railway had been previously contaminated with crude oil released as a result of the derailment.

27.     The raised track bed continues to seep contaminates into the unnamed tributary and/or Plaintiffs' real property.

28.     At the time of the filing of this Complaint, the Plaintiffs' property and the surrounding property remain contaminated with crude oil.

## COUNT I
## Oil Pollution Act of 1990 - Damages

29.     Paragraphs 1 through 28 are fully incorporated by reference as if fully set forth herein.

30.     Section 1002 of the Oil Pollution Act, 33 U.S.C. 2702(a), provides that each responsible party for a facility from which oil is discharged, or which poses a substantial threat of a discharge of oil,  into or upon navigable waters or adjoining shorelines or the exclusive economic zone, is liable for removal costs and certain damages.

31.     The Defendants and Fictitious Defendants are each a "responsible party" under OPA, 33 U.S.C. 2701(32).

32.     The freight train that was transporting the crude oil that is at the center of this litigation and that was owned and operated by the Defendants and Fictitious Defendants is a "facility" as defined by OPA, 33 U.S.C. 2701(9).

33.     The wetlands and tributaries located on the Plaintiffs' property are "navigable waters" as defined by OPA, 33 U.S.C. 2701(21) as there is a significant nexus between them and Lubbub Creek.

34.     The acts and omissions of the Defendants and Fictitious Defendants caused oil to be discharged into navigable waters located on the Plaintiffs' property in violation of 33 U.S.C. 2702.

35.     The Plaintiffs have incurred and will continue to incur removal costs for acts taken in response to the discharge of oil onto their real property.

36.     The Plaintiffs have incurred and will continue to incur damages for injury to, and economic losses resulting from the destruction of real property and natural resources.

37.     The Plaintiffs have and will continue to incur damages for loss of subsistence use of natural resources located on or near the Plaintiffs' property.

38.     Plaintiffs are entitled to recover their response costs, interest and damages, including damages to real property, damages for loss of natural resources, and damages for loss of use of their real property and natural resources, as well as any revenues, profits, or earning capacity lost as a result of the oil discharged by the Defendants onto the Plaintiffs' real property as provided by 33 U.S.C. §§ 2702 and 2705.

39.      Plaintiffs are entitled to recover all costs associated with assessing their damages claims and any costs to prevent, minimize or mitigate Defendants' ongoing violations pursuant to 33 U.S.C.  §§ 2701 and 2702.

40.     Acting pursuant to Section 1013 of the OPA, 33 U.S.C. §2713, Plaintiffs presented their claims to Defendants on June 19, 2015, more than ninety (90) days before the filing of this Complaint.

41.    Defendants have not settled with Plaintiffs within the 90-day period described in 33 U.S.C. §2713(c)(2).

WHEREFORE, Plaintiffs request that this Court:

(a)    Issue a judgment of liability against Defendants and Fictitious Defendants under the OPA for damages, response costs and interest incurred at the time of trial;

(b)    Issue a declaratory order on liability under OPA, which will be binding against the Defendants for the recovery of future removal costs and damages;

(c)    Award litigation costs to the Plaintiffs, including attorneys' fees, expert witness fees, and interest incurred in assessing Plaintiffs' damages and instituting suit to mitigate  Defendants' and Fictitious Defendants' oil pollution;

(d)    Award Plaintiffs damages for all other covered  removal costs and damages allowed pursuant to 33 U.S.C. 2702(b), including damages to Plaintiffs' land, natural resources, revenues, profits, and decrease in value of real property; and

(e)    Grant such other relief as this Court deems proper.

## COUNT II
## Clean Water Act – Civil Penalties

42.    Paragraphs 1 through 41 are fully incorporated by reference as if fully set forth herein.

43.     Section 505 of the Clean Water Act, 33 U.S.C.A. § 1365, allows a citizen to commence a civil action on his own behalf against any person who is alleged to be in violation of an effluent standard or limitation under the CWA.

44.     The CWA provides that "the discharge of oil or hazardous substances . . . into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone . . . in such quantities as may be harmful  . . . is prohibited."  33 U.S.C.A. § 1321(b)(3).

45.     The freight train that was transporting the crude oil that is at the center of this litigation and that was owned and operated by the Defendants is an "onshore facility" as defined by the Clean Water Act, 33 U.S.C.A. § 1321(a)(10).

46.     The Defendants and Fictitious Defendants did cause or permit harmful quantities of oil to discharge into the navigable waters of the United States.

47.     The discharge of harmful quantities of oil by the Defendants and Fictitious Defendants was a violation of the CWA, 33 U.S.C.A. § 1321(b)(3).

48.     The discharge of oil has created and continues to create a condition of pollution in and around the navigable waters of the United States.

49.     The Plaintiffs have incurred and will continue to incur removal costs for acts taken in response to the discharge of oil onto their real property.

50.     Plaintiffs are entitled to recover all costs of removal incurred in connection with the oil discharge.

51.     Defendants are subject to a civil penalty in an amount up to $25,000 per day of violation or an amount up to $1,000 per barrel of oil discharged, and are subject to a civil penalty of not less than $100,000, and not more than $3,000 per barrel of oil or unit of reportable quantity of oil discharged if the discharge of oil was caused by the gross negligence or willful misconduct of the Defendants.

WHEREFORE, Plaintiffs request that this Court:

(a)     Issue a judgment of liability against Defendants under the CWA for removal costs incurred at the time of trial;

(b)     Issue a declaratory order on liability under the CWA, which will be binding in any subsequent action or actions to recover further removal costs;

(c)     Issue an order imposing civil penalties on the Defendants for violations of the CWA;

(d)     Award Plaintiffs damages for all removal costs and damages allowed pursuant to 33 U.S.C. 1321(10); and

(e)     Grant such other relief as this Court deems proper.

## COUNT III
### Negligence

52.     Paragraphs 1- 51 are fully incorporated by reference as if fully set forth herein.

53.    At all material times, Defendants were the owners and operators of the freight train and railway at issue in this litigation.

54.    At all material times, Defendants and Fictitious Defendants, jointly, severally and/or through their respective agents, servants, workmen and/or employees had custody, care and control of the freight train and the railway.

55.    At all material times, Defendants and Fictitious Defendants, jointly and severally, had a duty to the Plaintiffs to properly maintain the railway and properly and safely operate freight trains that traveled through the Plaintiffs' property.

56.    At all material times, Defendants and Fictitious Defendants, jointly and severally, had a duty to the Plaintiffs to prevent the discharge and accumulation of oil and contaminants onto their property and to otherwise refrain from causing damage to the Plaintiffs' property.

57.    On or about November 7, 2013, Defendants, jointly and severally, breached their duty by negligently failing to properly maintain the railway, properly operate the freight train, and/or otherwise prevent the derailment of the freight train, which discharged crude oil and contaminants on to the Plaintiffs' property.

58.    Defendants, jointly and severally, breached their duty to the Plaintiffs by negligently using contaminated soil in the reconstruction of the rail bed.

59.    Defendants and Fictitious Defendants, jointly and severally, breached their duty by negligently failing to remove the discharged oil from the Plaintiffs' property.

60.    Defendants and Fictitious Defendants, jointly and severally, breached their duty to the Plaintiffs by negligently damaging the grass, shrubs, trees, marketable timber, and other natural growth and habitat on the Plaintiffs' property.

61.    As a result of the aforesaid negligence, Plaintiffs' property value was substantially damaged by the crude oil that was discharged onto and continues to contaminate the Plaintiffs' property and surrounding property.

62.    But for the aforesaid negligence, the Plaintiffs' property, the unnamed tributary, and/or Lubbub Creek would not be contaminated and polluted.

63.    The Defendants' negligence was the direct and proximate cause of damage to the Plaintiffs.

64.    As a result of the Defendants' negligence, Plaintiffs have suffered and will continue to suffer damages.

WHEREFORE, the Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory damages, prejudgment interest, court costs, attorney's fees, and such other and further relief as a jury may award and this Court may deem just and proper.

## COUNT IV
## Wantonness

65.   Paragraphs 1- 64 are fully incorporated by reference as if fully set forth herein.

66.   At all material times, Defendants were the owners and operators of the freight train and railway at issue in this litigation.

67.   At all material times, Defendants, jointly, severally and/or through their respective agents, servants, workmen and/or employees had custody, care and control of the freight train and the railway.

68.   At all material times, Defendants, jointly and severally, had a duty to the Plaintiffs to properly maintain the railway and properly and safely operate freight trains that traveled through the Plaintiffs' property.

69.   At all material times, Defendants, jointly and severally, had a duty to the Plaintiffs to prevent the discharge and accumulation of oil and contaminants onto their property and to otherwise refrain from causing damage to the Plaintiffs' property.

70.   On or about November 7, 2013, Defendants, jointly and severally, breached their duty by wantonly, willfully, or recklessly failing to properly maintain the railway, properly operate the freight train, and/or otherwise prevent the derailment of the freight train, which discharged crude oil and contaminants onto the Plaintiffs' property.

71.     Defendants, jointly and severally, breached their duty to the Plaintiffs by wantonly, willfully, or recklessly using contaminated soil in the reconstruction of the rail bed.

72.     Defendants, jointly and severally, breached their duty by wantonly, willfully, or recklessly failing to remove the discharged oil from the Plaintiffs' property.

73.     Defendants, jointly and severally, breached their duty to the Plaintiffs by wantonly, willfully, or recklessly damaging the grass, shrubs, trees, marketable timber, and other natural growth and habitat on the Plaintiffs' property.

74.     As a result of the aforesaid wantonness, willfulness, or recklessness, Plaintiffs' property value was substantially damaged by the crude oil that was discharged onto and continues to contaminate the Plaintiffs' property and surrounding property.

75.     But for the aforesaid wantonness, willfulness, or recklessness, the Plaintiffs' property, the unnamed tributary, and/or Lubbub Creek would not be contaminated and polluted.

76.     The Defendants' wantonness, willfulness, or recklessness were the direct and proximate cause of damage to the Plaintiffs.

77.     As a result of the Defendants' wantonness, willfulness, or recklessness, Plaintiffs have suffered and will continue to suffer damages.

WHEREFORE, the Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory damages (including mental anguish and emotional distress), punitive damages, prejudgment interest, court costs, attorney's fees, and such other and further relief as a jury may award and this Court may deem just and proper.

## COUNT V
## Strict Liability

78.    Paragraphs 1- 77 are fully incorporated by reference as if fully set forth herein.

79.    At all material times, Defendants, individually and/or through their respective agents, servants, workmen and/or employees knew or should have reasonably known that crude oil is a highly volatile and hazardous material and poses a high degree of risk to property if it comes in contact with land, water or air.

80.    At all material times, Defendants, individually and/or by their respective agents, workmen and/or employees, were engaged in an abnormally dangerous activity when they transported highly combustible crude oil across Plaintiffs' property.

81.    Plaintiffs are in the class of persons that Defendants should reasonably foresee as being the subject of harm caused by engaging in the abnormally dangerous activity of transporting highly combustible crude oil.

82.    Plaintiffs' real property value is substantially damaged by the contaminants that were spilled and continue to leak onto their land.

83.    The grass, shrubs, trees, marketable timber, and other natural growth and habitat on the Plaintiffs' property were also substantially damaged as a result of the fire and explosion resulting from the derailment of the freight train that was transporting crude oil.

84.    The abnormally dangerous activities in which the Defendants' participated were the direct and proximate cause of Plaintiffs' damages.

85.    By engaging in this abnormally dangerous activity which resulted in Plaintiffs' sustained injuries, Defendants are strictly liable for Plaintiffs' damages.

WHEREFORE, the Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory damages (including mental anguish and emotional distress), punitive damages, prejudgment interest, court costs, attorney's fees, and such other and further relief as a jury may award and this Court may deem just and proper.

## COUNT VI
### Trespass

86.    Paragraphs 1- 85 are fully incorporated by reference as if fully set forth herein.

87.    Plaintiffs are the sole owners of the real property upon which the train derailment at issue in this litigation occurred.

88.    On or about November 7, 2013, Defendants trespassed onto the real property owned by the Plaintiffs, causing approximately 350,000 gallons of oil to be spilled, discharged, and/or leaked into and on those lands.

89.    Defendants' trespass was committed under circumstances of insult or contumely in that said trespass occurred as a direct result of Defendants' wanton, willful, or reckless acts and/or omissions.

90.    Defendants' trespass resulted in irreparable harm to the Plaintiffs in that their land suffers from continued exposure to contaminants.

91.    Defendants' trespass resulted in irreparable harm to the Plaintiffs in that the grass, shrubs, trees, marketable timber, and other natural growth and habitat on the Plaintiffs' property was significantly damaged or destroyed.

92.    Defendants' trespass caused and continues to cause injuries to the Plaintiffs' property.  If left unrestrained, the potential damage that could proximately result from Defendants' continued trespass would be extremely difficult, if not impossible, to assess accurately.

WHEREFORE, the Plaintiffs demand judgment against Defendants and Fictitious Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory damages (including mental anguish and emotional distress), punitive damages, prejudgment interest, court costs, attorney's

fees, and such other and further relief as a jury may award and this Court may deem just and proper.

## COUNT VII
### Nuisance

93.     Paragraphs 1- 92 are fully incorporated by reference as if fully set forth herein.

94.     On or about November 7, 2013, Defendants, without lawful authority, discharged approximately 350,000 gallons of oil into and onto the Plaintiffs' property and surrounding lands, wetlands, tributaries, and Lubbub Creek.

95.     As a result of the Defendants' acts and/or omissions, the Plaintiffs' property and the surrounding property suffer from continued exposure to contaminants.

96.     As a result of the Defendants' acts and/or omissions, the grass, shrubs, trees, marketable timber, and other natural growth and habitat on the Plaintiffs' property was significantly damaged or destroyed.

97.     The Defendants' acts and/or omissions have deprived the Plaintiffs of the free enjoyment and use of their land.

98.     As a proximate result of the Defendants' acts and/or omissions, Plaintiffs' property has been diminished in value, and will continue to diminish in value unless the nuisance is abated.

WHEREFORE, the Plaintiffs demand judgment against Defendants and Fictitious Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory damages, prejudgment interest, court costs, attorney's fees, and such other and further relief as a jury may award and this Court may deem just and proper.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that this Honorable Court enter and grant the following relief:

(a)     As to Count I, find the Defendants jointly and severally liable under the Oil Pollution Act of 1990 for damages, response costs and interest incurred at the time of trial; issue a declaratory order against Defendants on liability under the Oil Pollution Act of 1990, which will be binding with respect to future removal costs and damages; and award damages for all covered removal costs and damages allowed under the Oil Pollution Act of 1990, as well as litigation costs, including attorneys' fees, expert witness fees, and interest incurred by the Plaintiffs;

(b)     As to Count II, find the Defendants jointly and severally liable under the Clean Water Act for removal costs incurred at the time of trial; issue a declaratory order against Defendants on liability under the Clean Water Act, which will be binding with respect to future removal costs; issue an order imposing civil penalties on the Defendants for violations of the Clean Water Act; and award

Plaintiffs damages for all removal costs and damages allowed under the Clean Water Act;

(c)     As to Count III, find the Defendants jointly and severally liable to the Plaintiffs for negligence and award Plaintiffs an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory damages, prejudgment interest, court costs, and attorney's fees;

(d)     As to Count IV, find the Defendants jointly and severally liable to the Plaintiffs for wantonness and award Plaintiffs an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory damages (including mental anguish and emotional distress), punitive damages, prejudgment interest, court costs, and attorney's fees;

(e)     As to Count V, find the Defendants strictly liable, jointly and severally, to the Plaintiffs for damages caused by the Defendants in undertaking an abnormally dangerous activity and award the Plaintiffs an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory damages (including mental anguish and emotional distress), punitive damages, prejudgment interest, court costs, and attorney's fees;

(f)     As to Count VI, find the Defendants jointly and severally liable to the Plaintiffs for trespass and award the Plaintiffs damages in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory damages

(including mental anguish and emotional distress), punitive damages, prejudgment interest, court costs, and attorney's fees;

(g)     As to Count VII, find the Defendants jointly and severally liable to the Plaintiffs for nuisance and award the Plaintiffs damages in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory damages, prejudgment interest, court costs, and attorney's fees;

(h)     Grant such further relief as this Court may deem just and proper.

## PLAINTIFFS DEMAND TRIAL BY STRUCK JURY

Respectfully submitted,

*/s/ David E. Rains*
David E. Rains (ASB-2728-S81D)
Jane L. Calamusa (ASB-5640-A26C)
Ann L. Reardon (ASB-9236-N50R)
Attorneys for the Plaintiffs

**Of Counsel:**

ROSEN HARWOOD, P. A.
2200 Jack Warner Pkwy, Ste. 200
P.O. Box 2727
Tuscaloosa, AL 35403
(205) 344-5000
drains@rosenharwood.com

Defendants to be served by certified mail at the addresses listed below.

**Defendants' Addresses:**

Genesee & Wyoming, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

Alabama and Gulf Coast Railway, LLC
c/o C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL  36104